# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

JEFFREY A. WOGENSTAHL,

                Petitioner,           :     Case No. 1:17-cv-298

        - vs -                         District Judge Thomas M. Rose
                                       Magistrate Judge Michael R. Merz

CHARLOTTE, JENKINS, Warden,
 Chillicothe Correctional Institution,

                                 :
              Respondent.

---

# SUPPLEMENTAL REPORT

---

This capital habeas corpus case under 28 U.S.C. § 2254 is before the Court on Petitioner's Objections (ECF No. 9) to the Magistrate Judge's Transfer Order (ECF No. 6). Judge Rose recommitted the matter for reconsideration in light of the Objections (ECF No. 10). On Petitioner's unopposed motion (ECF No. 16), the Magistrate Judge authorized supplemental briefing which is now complete (ECF Nos. 18, 20, 21). The case is therefore ripe on the Recommittal Order.

**Procedural History**

Petitioner Jeffrey Wogenstahl was convicted of murdering ten-year old Amber Garrett and sentenced to death on March 15, 1993. He filed his first habeas corpus Petition in this Court in 1999 (Case No. 1:99-cv-843). That Petition was dismissed with prejudice March 5, 2008, and the dismissal was affirmed by the Sixth Circuit. *Wogenstahl v. Mitchell*, 668 F.3d 3017 (6th Cir.

2012), cert. denied sub nom. *Wogenstahl v. Robinson*, 568 U.S. 902 (2012).

The Petition in this case was filed May 3, 2017 (ECF No. 1).  Upon initial review under Rule 4 of the Rules Governing § 2254 Cases, the Magistrate Judge concluded the Petition here was second or successive and ordered it transferred to the Sixth Circuit for that court's determination under 28 U.S.C. § 2244(b) of whether the case could proceed (Transfer Order, ECF No. 6).  The effectiveness of the Transfer Order was stayed pending a decision by Judge Rose on any appeal. *Id.* at PageID 595.

# Analysis

## First Objection:  Lack of Magistrate Judge Authority

Wogenstahl first objects that the Magistrate Judge lacked authority to enter the Transfer Order because the Order is "dispositive" and only District Judges have authority to enter "dispositive" orders (Objections, ECF No. 9, PageID 1172-73, citing *Vogel v. U.S. Office Products Co.*, 258 F.3d 509 (6th Cir. 2001)).

The Magistrates' Act, codified at 28 U.S.C. § 636(b)(1)(A), precludes a magistrate judge from determining certain pretrial matters and those matters are called "dispositive" because they are "dispositive of a claim or defense of a party."  The list of dispositive motions contained in § 636(b)(1)(A) is nonexhaustive, and unlisted motions that are functionally equivalent to those listed in § 636(b)(1)(A) are also dispositive. *Vogel*, *supra* (holding motions to remand are dispositive) and *citing*, *Callier v. Gray*, 167 F.3d 977, 981 (6th Cir. 1999)(holding that a motion for default judgment is dispositive because it is "substantially similar to several of the listed

2

motions"); *Vitols v. Citizens Banking Co.*, 984 F.2d 168, 169-70 (6th Cir. 1993)(holding that a motion to certify a district court order for interlocutory appeal is dispositive); *Bennett v. General Caster Service of N. Gordon Co., Inc.*, 976 F.2d 995 (6th Cir. 1992)(*per curiam*)(holding that a motion for Rule 11 sanctions is dispositive); *United States Fid. & Guar. Co. v. Thomas Solvent Co.*, 955 F.2d 1085 (6th Cir. 1992)(holding that because a motion to realign parties would either destroy or preserve diversity jurisdiction, motions to realign are dispositive); *Woods v. Dahlberg*, 894 F.2d 187 (6th Cir. 1990)(holding that an order denying a motion to proceed in forma pauperis is dispositive because it is the functional equivalent of an involuntary dismissal). See also *National City Bank v. Aronson*, 474 F. Supp. 2d 925 (S.D. Ohio 2007)(Marbley, J.)(remand motion is dispositive). In determining whether a particular motion is dispositive, the Sixth Circuit has undertaken a functional analysis of the motion's potential effect on litigation. *Vogel*, 976 F.2d at 514-515.

The Sixth Circuit has never held that a transfer order under the AEDPA is the functional equivalent of any of the listed dispositive motions and has repeatedly accepted jurisdiction to decide the § 2244(b) question on transfer orders from the undersigned. However, it has also remanded cases for District Judge consideration of the transfer question on objections to the transfer order. That is why in this case the effectiveness of the Transfer Order was *sua sponte* postponed until Judge Rose could decide the appeal.

Petitioner argues that a transfer order is the functional equivalent of a dismissal for lack of jurisdiction (Objections, ECF No. 9, PageID 1173). Not so. Such an order dismisses nothing, but merely seeks the necessary permission of the circuit court to proceed. District courts have no jurisdiction over second-or-successive habeas applications. *Franklin v. Jenkins*, 839 F.3d 465 (6th Cir. 2016); *Burton v. Stewart*, 549 U.S. 147 (2007). The risk of proceeding in a capital habeas

3

case without jurisdiction is that the district court will find later, when the Court of Appeals reverses for lack of jurisdiction, that it has wasted years of effort litigating a case. So long as he has a stay of execution in place, a year-long delay is of no consequence to a condemned inmate. Given scarce judicial resources, that is not true of a district court.[1]

Although the Magistrate Judge disagrees with Wogenstahl's assertion that the Transfer Order is dispositive, he agrees that the standard of review should be *de novo*.

**Second Objection: Improperly Raising the § 2244(b) Issue S*ua Sponte***

Wogenstahl also complains that the Magistrate Judge raised the § 2244(b) issue *sua sponte* (Objections, ECF No. 9, PageID 1173-75).

Wogenstahl asserts the second-or-successive issue is a defense and the burden lies with the Respondent to raise it (Objections, ECF No. 9, PageID 1174, citing *Sanders v. United States*, 373 U.S. 1 (1963)). *Sanders* was decided thirty-three years before the AEDPA was enacted. Along with *Fay* v. *Noia*, 372 U.S. 391 (1963), and *Townsend v. Sain*, 372 U.S. 293, 313 (1963), it was part of the trilogy of habeas cases decided in the Spring of 1963 which created the veritable flood of habeas cases which has been an important part of the federal docket ever since. The number of those cases led to two important legislative developments, adoption of the Magistrates' Act in 1968 and of the Rules Governing Section 2254 Cases in 1976. Rule 4 of that set of Rules calls for a preliminary screening of habeas petitions before an answer is ordered. The Supreme Court has sanctioned raising a statute of limitations defense as that stage *sua*

---

[1] For many years now, the Southern District of Ohio has had one of the largest capital litigation dockets in the country.

*sponte*.  The statute of limitations is an affirmative defense which is forfeited if not pleaded as required by Fed. R. Civ. P. 8(c).  A district court may dismiss a habeas petition *sua sponte* on limitations grounds when conducting an initial review under Rule 4 of the Rules Governing § 2254 Cases. *Day v. McDonough*, 547 U.S. 198 (2006)(upholding *sua sponte* raising of defense even after answer which did not raise it).

Unlike the statute of limitations, which can be forfeited if not pleaded, lack of jurisdiction is never waived or forfeited. Fed. R. Civ. P. 12(h)(3).  A federal court is further obliged to note lack of subject matter jurisdiction *sua sponte. Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908); *Capron v. Van Noorden*, 6 U.S. 126 (1804); *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009); *Clark v. United States*, 764 F. 3d 653 (6th Cir. 2014).

If a habeas petition is second-or-successive, then the district court lacks jurisdiction to consider it without circuit court permission.  Therefore it was not error to raise the § 2244(b) issue *sua sponte*.

To the extent Petitioner claims he should have been given an opportunity to brief the issue before any ruling, he has now had that opportunity in filing Objections and the supplemental briefing the Court allowed.  Recommittal to the Magistrate Judge is in any event the relief Petitioner requested on this Second Objection and that relief has been granted.

**Third Objection:  The Petition Is Not Second or Successive**

Wogenstahl's substantive objection is that his instant Petition is not second-or-successive

5

(ECF No. 9, PageID 1176-84).

Wogenstahl begins by noting that both the Supreme Court and the Sixth Circuit have held that not all second-in-time habeas applications are second or successive. *Id.* at PageID 1177-78, citing *Panetti v. Quarterman*, 551 U.S. 930 (2007); *Stewart v. Martinez-Villareal*, 523 U.S. 637 (1998); *In re Jones*, 652 F.3d 603 (6th Cir. 2010); *Storey v. Vasbinder,* 657 F.3d 372 (6th Cir. 2011); *In re Bowen*, 436 F.3d 699 (6th Cir. 2006); and *In re Brock*, 2010 U.S. App. LEXIS 27235 (6th Cir. Jun 8, 2010).

Wogenstahl then notes that the Sixth Circuit "employs the abuse-of-the-writ doctrine to determine whether a petitioner's numerically second petition raising newly viable claims is a second or successive petition under 28 U.S.C. § 2254(b)" (ECF No. 9, PageID 1179, citing *Bowen, supra; In re Marsch*, 2006 U.S. App. LEXIS 31720 (6th Cir. Dec. 20, 2006); and *In re Landrum*, 2017 U.S. App. LEXIS 6035 (6th Cir. Feb. 13, 2017)).

The abuse-of-the-writ doctrine was a judicial construction created to deal with repetitive petitions before the AEDPA, at a time when there was no statutory limit on the number of habeas corpus petitions a prisoner could file.  Under that doctrine, a numerically second petition is "second" when it raises a claim that could have been raised in the first petition but was not so raised, either due to deliberate abandonment or inexcusable neglect. *Bowen* at 704, *citing McCleskey v. Zant*, 499 U.S. 467, 489 (1991).  But while § 2244(b) excludes petitions which are abusive, it does not codify the old abuse-of-the-writ doctrine.  That is to say, a petition does not escape classification as second-or-successive just because it is not an abuse of the writ.  Rather, it must be based on same claim that was not available at the time of the first petition, either because of lack of ripeness as in *Bowen* or because the claim had not yet arisen as in *Panetti*.

6

As Wogenstahl notes, the Sixth Circuit requires a claim-by-claim analysis of the second-or-successive question (Objections, ECF No. 9, PageID 1180, citing *In re Bowling,* 2007 U.S. App. LEXIS 30397 (6th Cir. Sept. 12, 1997).  Thus the claims pleaded by Wogenstahl in the instant Petition must be examined in that way.

The instant Petition pleads four claims for relief:

**First Claim for Relief:**  The prosecution suppressed material exculpatory evidence.

**Second Claim for Relief:**  The prosecution knowingly adduced false testimony and engaged in inaccurate argument both of which it neither corrected nor disclosed the falsity to trial counsel.

**Third Claim for Relief:**  Trial counsel's acts and omissions deprived Jeffrey Wogenstahl of effective assistance of counsel during the pretrial, trial, and mitigation phases.

**Fourth Claim for Relief:**  The cumulative effect of the federal constitutional errors denied Wogenstahl due process under the Fifth, Sixth, Eighth [,] and Fourteenth Amendments.

(Petition, ECF No. 7, PageID 598-99.)

Wogenstahl acknowledges that relief on the Fourth Claim (cumulative error) is precluded by *Lorraine v. Coyle*, 291 F.3d 416 (6th Cir. 2002).  He has pleaded the claim in the apparent hope the Supreme Court will reverse this position and declare its decision applicable on collateral review.

The other three claims are based on extensive exhibits filed with the Petition (Appendix, ECF No. 8).  Much of this documentation existed and was in the hands of Wogenstahl's counsel at the time of trial. (See, e.g., the first twelve documents in the Appendix.)  Wogenstahl's theory about why his first three claims are not second-or-successive is as follows:

The filing of Wogenstahl's pending petition was prompted by documents that he received in the course of litigation since the completion of his initial habeas petition. He pursued Freedom of

Information Act requests as well as state public records requests. The latter resulted in a mandamus action being filed in the Ohio Supreme Court which the parties resolved after court ordered mediation. See *State ex rel. Office of the Ohio Public Defender v. Harrison Police Dept.*, Ohio Supreme Court Case No. 16-0410 ("post federal habeas litigation"). It was not until the Harrison Police Department allowed counsel (as a result of that litigation) to view and copy the entire police file in this case that the following claims for relief, and the evidence supporting them, became available and/or ripe. This petition was filed within one-year of obtaining these documents.

(Objections, ECF No. 9, PageID 1180-81.) Thus Petitioner's theory is that a habeas claim arises when the evidence to support it becomes available.[2] Wogenstahl offers no support for that theory from the case law. In fact this Court has consistently distinguished between claims that are newly-arising (e.g., a *Ford v. Wainright* claim that arises when a death row inmate becomes incompetent to be executed) and claims for which a petitioner has newly-discovered evidence. For example, in *Smith v. Pineda*, 2017 U.S. Dist. LEXIS 50346, *1 (S.D. Ohio Apr. 3, 2017), adopted *Smith v. Pineda*, 2017 U.S. Dist. LEXIS _____ (S.D. Ohio July 18, 2017), the Court distinguished between newly-arising predicates and newly-discovered evidence to support existing claims. See also *Tibbetts v. Warden*, 2017 U.S. Dist. LEXIS 51968 (S.D. Ohio Apr. 5, 2017), aff'd. 2017 U.S. Dist. LEXIS 83416 (S.D. Ohio May 30, 2017)(Dlott, J.).

28 U.S.C. § 2244(b) contemplates that newly-discovered evidence can support granting permission for a second-or-successive habeas application, but only if

(B)
(i)     the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

(ii)   the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no

_____

[2] The mention that the documents were discovered less than a year before May 3, 2017, is presumably in support of an argument that this second Petition is timely under 28 U.S.C. § 2244(d)(1)(D).

reasonable factfinder would have found the applicant guilty of the
underlying offense.

In other words, a newly-discovered evidence claim must show due diligence in discovering the

evidence and that it is sufficient to show actual innocence. Wogenstahl's theory that newly-

discovered evidence gives rise to a new claim avoids both of these procedural hurdles which

Congress clearly intended to erect to second-or-successive habeas applications, particularly in

capital cases such as this where the crime was committed twenty-five years ago.

In his supplemental Merit Brief, Wogenstahl argues he can avoid the § 2244(b) hurdle

because (1) his claims were not ripe "during his initial habeas proceedings or in the alternative

(2) he can show cause and prejudice to excuse not filing earlier or in the alternative (3) "transfer

is not mandated because a fundamental miscarriage of justice has occurred in this case." (ECF

No. 18, PageID 1210.)

In support of his new Petition, Wogenstahl claims that the following exhibits should have

been turned over at the time of trial under *Brady v. Maryland*, 373 U.S. 83 (1963): Exhibits 13a,

13b, 14 – 33, 35 – 73, 76, 77, 79, 81, 86, and 87. *Id.* at PageID 1217. He emphasizes that these

documents were in fact only turned over on May 3, 2016, in "post federal habeas litigation." *Id.*

As to how he obtained the documents, he references the Freedom of Information Act, the Ohio

Public Records Act, and a mandamus action in the Ohio Supreme Court. The mandamus

complaint was not filed until March 18, 2016.[3] The Complaint avers that the relevant request for

public records to the Harrison Police Department was made January 14, 2016. Wogenstahl has

been continuously represented by counsel in this Court since his original Petition was filed in

1999. Why wait seventeen years to make a public records request from such an obvious source?

---

[3] Available under Case No. 2016-0410 on the Ohio Supreme Court's
websitehttps://supremecourt.ohio.gov/clerk/ecms/#/caseinfo/2016/0410, visited July 18, 2017.

If the case is transferred, Petitioner will have to justify this delay to the Sixth Circuit under 28 U.S.C. §2244(b)(2)(B).  Construing the statute to permit filing within one year of discovery of new evidence permits Petitioner to avoid that burden.

Wogenstahl writes at length in his Merits Brief how his failure to file until now is excusable under *Martinez v. Ryan*, 566 U.S. ___, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012), and *Trevino v. Thaler*, ___ U.S. ___, 133 S. Ct. 1911, 185 L. Ed. 2d 1044 (2013).  There the Supreme Court held that failure to raise an ineffective assistance of trial counsel claim in post-conviction could be excused if a petitioner received ineffective assistance of post-conviction counsel.  The Sixth Circuit has not yet held *Martinez* and *Trevino* apply in Ohio; this Court assumes they do.  But how can ineffective assistance of post-conviction counsel which occurred many years ago (before the first habeas petition was filed in 1999) excuse failure to gather evidence by habeas corpus counsel while the first petition was pending or since the first case was terminated?

Finally, Wogenstahl argues this case "presents a fundamental miscarriage of justice." Even assuming he had presented new evidence which meets the demanding standard of *Schlup v. Delo*, 513 U.S. 298, 316 (1995)(which he has not), he has presented no authority for the proposition that actual innocence will exempt a petitioner from obtaining circuit permission before proceeding on a second-or-successive petition.  There is no authority known to this Court that even suggests that actual innocence evidence makes a claim newly arising like the claim in *Pannetti*.

**Conclusion**

Because Wogenstahl's current Petition is a second-or-successive habeas application, he cannot proceed in this Court without permission from the circuit court. It is therefore respectfully recommended that the District Judge affirm the Transfer Order.

July 19, 2017.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).