# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

JEFFREY A. WOGENSTAHL,

                Petitioner,              :     Case No. 1:17-cv-298

     - vs -                             District Judge Thomas M. Rose
                                      Magistrate Judge Michael R. Merz

CHARLOTTE, JENKINS, Warden,
 Chillicothe Correctional Institution,
                                      :

                Respondent.

---

# SECOND SUPPLEMENTAL REPORT

This capital habeas corpus case is again before the Court on the question of whether the Petition must be transferred to the Sixth Circuit as a second-or-successive habeas application. After the Magistrate Judge filed a Supplemental Report in support of transfer, Petitioner again objected (ECF No. 23). The Warden as responded (ECF No. 25) and Judge Rose has recommitted the matter (ECF No. 24).

## Why the Second-or-Successive Issue is Important and to Whom

Wogenstahl fights very hard against transfer. At this point in time he has filed 156 pages of briefing on the issue. This is consistent with the behavior of other counsel from the Ohio Public Defender Death Penalty Department and the Capital Habeas Unit of the Federal Public Defender for this District. These counsel refuse to acknowledge the dilemma this Court faces in dealing with second-in-time habeas petitions: if we conclude the applications are not second-or-

successive and litigate them, probably for a number of years, and the circuit court disagrees on an eventual merits appeal, the time in district court will have been wasted, because we will have acted without subject matter jurisdiction and everything we have done will be void. *Franklin v. Jenkins*, 839 F.3d 465 (6th Cir. 2016); *Burton v. Stewart*, 549 U.S. 147 (2007). This would be an obvious waste of scarce judicial resources and would further defeat the State's interest in promptly executing the sentence.[1] Only the petitioner would benefit from the delay.

On the other hand, if this Court erroneously decides the Petition is second-or-successive, the Sixth Circuit will quickly correct that error and dismiss the transfer as unnecessary. *Jackson v. Sloan*, 800 F.3d 260, 261 (6th Cir. 2015), citing *Howard v. United States*, 533 F.3d 472 (6th Cir. 2008); *In re: Cedric E. Powell*, Case No. 16-3356, 2017 U.S. App. LEXIS 1032 (6th Cir. Jan. 6, 2017). In the Cedric Powell case, for example, this Court entered the Transfer Order on April 4, 2016, and the Sixth Circuit had already remanded the case by January 9, 2017. The Sixth Circuit is even faster on this issue in capital cases. District Judge Dlott filed a transfer order in the Raymond Tibbetts capital case. *In re Raymond Tibbetts*, 2017 U.S. Dist. LEXIS 83416 (S.D. Ohio May 30, 2017)(Dlott, J.) The Sixth Circuit decided the second-or-successive issue in less than sixty days. *In re: Raymond Tibbetts*, 2017 U.S. App. LEXIS 13664 (6th Cir. Jul. 24, 2017).

In sum, denial of transfer risks several years of intense litigation which will be useless if the circuit court decides transfer was required. On the other hand, transferring the case in error gets quickly corrected by the circuit court.

---

[1] Jeffrey Wogenstahl murdered Amber Garrett in November 1991; his execution is presently scheduled for April 17, 2019, nearly twenty-eight years after the murder.

**First Objection: Lack of Magistrate Judge Authority to Enter Order**

This issue is adequately dealt with in the Supplemental Report (ECF No. 22). The Magistrate Judge agrees the standard of review is de novo.

**Second Objection: The Petition is Not Second of Successive**

**Subpart 1: Abuse of the Writ Doctrine**

Wogenstahl argues his second-in-time Petition is not an abuse of the writ and criticizes the Magistrate Judge for not applying the abuse of the writ doctrine (Objections, ECF No. 23, PageID 1299-1300).

The Supplemental Report noted that the Sixth Circuit has employed the abuse of the writ doctrine in analyzing second-or-successive questions, but noted that § 2244(b), adopted as part of the AEDPA, "does not codify the old abuse-of-the-writ doctrine." (ECF No. 22, PageID 1291.) There is new law on this question since the Supplemental Report was filed. In *In re: Raymond Tibbetts*, *supra*, the Sixth Circuit again noted that the abuse of writ doctrine is generally applied to the second-or-successive issue. *Id.* at *5. It went on, however, to reject Tibbetts' assertion that his lethal injection claims were newly-arising.

Wogenstahl's claims are not lethal injection grounds for relief, but purport to be for suppression of favorable evidence under *Brady v. Maryland*, 373 U.S. 83 (1963)(First Claim); presentation of perjured testimony under *Napue v. Illinois*, 360 U.S. 264, 269 (1959)(Second Claim); and ineffective assistance of trial counsel under *Strickland v. Washington*, 466 U.S. 668 (1984)(Claim Three).[2] All of these claims arose at the time of trial. The fact that Wogenstahl

---

[2] Claim Four is for cumulative error. Wogenstahl has conceded this ground does not state a claim for relief in habeas at the present time, but is being pleaded in the hope that law will change.

has new evidence to support these claims does not make them newly-arising claims. *See In re: Raymond Tibbetts*, *supra.*

Wogenstahl objects that a number of courts have acknowledged that "newly discovered *Brady* Material may create a new claim" (Objections, ECF No. 23, PageID 1301, citing *Carter v. Mitchell*, 828 F.3d 455, 467 (6th Cir. 2016)[3]; *Gonzales v. Wong*, 667 F.3d 965 (9th Cir. 2011). *See also*, *In re Bowling,* 6th Cir. No. 06-5937, 2007 U.S. App. LEXIS 30397, *10 (Sept. 12, 1997) (the Court determined that three of the five claims raised in Bowling's petition were not subject to the 28 U.S.C. § 2244(b) conditions); *Tillman v. State*, 2005 UT 56, 128 P.3d 1123, 1145 (2005); *U.S. ex rel. Reese v. Peters*, 713 F. Supp. 1178 (N.D. Ill. 1989).

In *Carter* the Sixth Circuit affirmed this Court's denial of a stay and abey order to allow Carter to "exhaust" new evidence. It specifically disclaimed any adoption of the Ninth Circuit's *Gonzalez* decision. 829 F.3d at 467. It specifically did not find that Carter had a newly-arising *Brady* claim based on his new evidence.

In *Bowling* the Sixth Circuit found that the petitioner could not have brought his *Atkins v. Virginia* claim while his first petition was pending because the factual basis for the claim – the Kentucky courts' ruling on his *Atkins* claim – did not exist when he filed his first petition. Analyzing his five claims individually, it found three were not second or successive and two claims were. The opinion contains no criticism at all of the district court's decision to transfer what turned out to be a mixed petition. In contrast, of course, if the district court had retained jurisdiction and adjudicated Claims 2 and 5 which were found in *Bowling* to be second-or-successive, its eventual judgment on those claims would have been void for lack of subject matter jurisdiction.

---

[3] This citation is erroneous. *Carter v. Mitchell* is reported at 829 F.3d 455.

**Subpart 2: The Claims in the Petition are New, not Just Old Claims Supported by New Evidence**

Wogenstahl claims in part that his claims are newly-arising because the Department of Justice concluded in August 2013 that some of the expert testimony at his trial "exceeds the limits of the science." (Objections, ECF No. 23, PageID 1302-04.) He argues that the State should have known this at the time of trial in 1991. No authority is offered for that proposition. It is certainly true that a great deal of progress has been made in forensic science in the twenty-plus years since Wogenstahl was tried.[4] But how can the Court credit the claim that the State, at the time of trial, knew that the forensic science on which it relied would be brought into question by subsequent research? The "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with the rudimentary demands of justice." *Workman v. Bell*, 178 F.3d 759, 766 (6th Cir. 1998), *quoting Giglio v. United States*, 405 U.S. 150, 153 (1972). This rule applies to both the solicitation of false testimony and the knowing acquiescence in false testimony. *Workman*, 178 F.3d at 766, *citing Napue v. Illinois*, 360 U.S. 264, 269 (1959). However, to prevail on such a claim, a petitioner must show that the statement in question was false, that the prosecution knew it was false, and that it was material. *Wogenstahl v. Mitchell*, 668 F.3d 307, 323 (6th Cir. 2012), *citing Rosenkrantz v. Lafler*, 568 F.3d 577, 583-84 (6th Cir. 2009); *Brooks v. Tennessee*, 626 F.3d 878, 894-95 (6th Cir. 2010); *Byrd v. Collins*, 209 F.3d 486 (6th Cir. 2000), *citing United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989); *United States v. O'Dell*, 805 F.2d 637, 641 (6th Cir. 1986).

---

[4] Ironically, because DNA technique had advanced, Wogenstahl asked for re-testing of the blood spot found in his car which he believed would show the blood was not Amber Garrett's. Instead, the new DNA testing confirmed the identification.

**Subpart 3: Wogenstahl was Diligent in Discovering the New Evidence**

The Magistrate Judge has no quarrel with Wogenstahl's claim, accepted by the Ohio courts, that he pursued relief on the basis of the new science with due diligence (Objections, ECF No. 23, PageID 1303-04). But § 2244(b)(2)(B) allows the circuit court (and not this Court) to consider proven diligence in fact gathering only if

> the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Wogenstahl does not purport to meet this standard.

**Subpart 4: *Martinez* Excuses Any Failure to Gather Evidence Sooner**

Wogenstahl's fourth subpart relies on *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, ___ U.S. ___, 133 S. Ct. 1911, 185 L. Ed. 2d 1044 (2013). In *Martinez* the Supreme Court held:

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington,* 466 U. S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim

has some merit. Cf. *Miller-El v. Cockrell*, 537 U. S. 322, 123 S. Ct.
1029, 154 L. Ed. 2d 931 (2003) (describing standards for
certificates of appealability to issue).

132 S. Ct. at 1318-1319. In *Trevino* the Court extended *Martinez* to the Texas system. The
Sixth Circuit has not yet decided whether *Martinez* and *Trevino* apply to the Ohio system of
litigating ineffective assistance of trial counsel claims, but this Court "assumes they do"
(Supplemental Report ECF No. 22, PageID 1295). Despite that assumption, the Supplemental
Report found that *Martinez* and *Trevino* did not support relief here. *Id.*

In his Objections, Wogenstahl points to an affidavit of post-conviction counsel, Joseph
Edwards, stating he had neither time nor funds to hire a psychologist, a forensic pathologist, a
crime scene expert, or an eyewitness identification expert. The Magistrate Judge fails to
understand the relevance of these facts. *Martinez* and *Trevino* provide a non-constitutional
exception to the holding in *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), that ineffective
assistance in post-conviction proceedings will not excuse a procedural default; the exception
applies only to substantial claims of ineffective assistance of trial counsel. Wogenstahl pleads an
ineffective assistance of trial counsel claim, with many, many sub-claims, as his Third Claim for
Relief in this second-in-time petition (ECF No. 1-1, PageID 148-64). *Martinez* and *Trevino*
would be applicable, if at all, to excuse post-conviction counsel Edwards' failure to raise any of
these sub-claims in post-conviction. **But *Martinez* and *Trevino* have nothing to do with
whether a second-in-time petition is second-or-successive.** If the circuit court allows
Wogenstahl to proceed and the Warden pleads that any of the sub-claims in the Third Claim for
Relief are procedurally defaulted, at that point it will be pertinent to consider whether Mr.
Edwards' failure to raise any of these sub-claims was ineffective assistance.

Wogenstahl also criticizes the Supplemental Report for not giving weight to the Affidavit

of Gregory Meyers, Assistant Ohio Public Defender who became habeas counsel to Wogenstahl while his first petition was pending a report and recommendations on the merits (Affidavit, ECF No. 19-1). Most of the Affidavit reports Meyers' opinion of the performance of his habeas co-counsel, John Gideon. If Meyers' statements are accepted as true,[5] Gideon performed deficiently in representing Wogenstahl for part of the time he represented Wogenstahl on his fist petition. Again, the Magistrate Judge does not understand what relationship this has to *Martinez* and *Trevino*. It does not involve any proof that Wogenstahl's failure to raise any particular ineffective assistance of trial counsel claim in post-conviction was the result of ineffective assistance of post-conviction trial counsel, who was Joseph Edwards, not John Gideon.

Wogenstahl's present counsel posit the finding of exhibits now tendered in support of his Third Claim for Relief at a time when his first habeas petition was on appeal and assert that he would have had no options at that point, that his "claims would have been [procedurally] defaulted until *Martinez* and *Trevino* were decided." (Objections, ECF No. 23, PageID 1310.) Wogenstahl could have presented the new evidence to the Sixth Circuit and asked for a remand and an opportunity to reopen the judgment; if that relief had been granted, there would be no second-or-successive question in the case.

In support of the proposition that his ineffective assistance of trial counsel claim is substantial, Wogenstahl points to the February 13, 2015, Affidavit of Carl J. Schmidt (ECF No. 23, PageID 1328-31) and March 13, 2014, report of Forensic Science Consultant Gary Rini (ECF No. 23, PageID 1332-1338), and asks "How can it be that trial counsel (and in turn post-conviction counsel) were not ineffective for failing to bring forth evidence that contradicted the

---

[5] This judge has deep respect for Mr. Meyers and his work on behalf of death row inmates over many years and has no reason to doubt his observations.

State's entire theory at trial?" (Objections, ECF No. 23, PageID 1311.) Whether or not there is a substantial claim of ineffective assistance of trial counsel is not at issue at this juncture in the case. *Martinez* and *Trevino* in no way speak to the second-or-successive question; they only address ineffective assistance of post-conviction counsel as an excusing cause to allow an otherwise defaulted ineffective assistance of trial counsel claim to be presented. The argument about *Martinez* and *Trevino* is a red herring at this point in the case – Wogenstahl has presented no authority even suggesting those cases can help a habeas petitioner avoid the second-or-successive bar.

**Conclusion**

Wogenstahl's Objections are unpersuasive. The Court should overrule them and transfer this case to the Sixth Circuit for a determination under 28 U.S.C. § 2244(b) of whether or not it can proceed.

August 8, 2017.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).